### EVANS *v.* NAPIER, WORSHAM & COMPANY.

1. Where one delivers to another a certain amount of money with which, as his agent, to purchase live stock, and the purchase is accordingly made, the title to the stock vests in the principal, and if he agrees that the agent shall use the stock for a certain rental, and further agrees that the agent may, whenever he desires to do so, purchase the stock from the principal for the cost with interest, this latter agreement is not a sale with reservation of title, and need not be recorded under the Civil Code, § 2776.

2. The fact that the agent made and delivered to the principal a bill of sale of the stock does not estop the principal to set up the above-stated facts.

The intention of the parties and the bona fides of the transaction is a ques-
tion for the determination of the jury.
3. It was therefore error, in a claim case, to refuse an amendment offered by
the claimant and averring the above-stated facts.

Argued May 17, — Decided June 7, 1900.

Levy and claim. Before Judge Hart. Wilkinson superior
court. October term, 1899.

*Allen & Pottle,* for plaintiff in error.
*John W. Lindsey,* contra.

SIMMONS, C. J.  It appears from the record that Napier, Wor-
sham & Company obtained, in October, 1893, a judgment against
Beck, and had execution issued thereon.  This execution was,
in December, 1898, levied upon certain live stock then in the
possession of Beck.  Evans filed a claim, asserting that the
property belonged not to Beck, the defendant, but to him.
When the claim case came on for trial, Evans offered to amend
his claim by averring that in April, 1898, Beck applied to him
for live stock with which to conduct a farm; that Evans de-
clined to furnish the stock, because he knew of the judgment
against Beck; that he subsequently agreed with Beck that he
would furnish $500 with which Beck was to go into the market
and, as his agent, purchase the live stock he desired; that, under
the agreement, Beck was to have the use of the stock at a rea-
sonable rental, and was to be allowed, if he within a reasonable
time desired to do so, to purchase the stock from Evans for the
cost price with interest thereon; that Beck took the money, pur-
chased the stock as agreed, and kept possession of it; that he
had never purchased the stock from Evans, and the title re-
mained in Evans; that the stock was purchased from divers and
sundry persons whom Evans did not know, and that, in order
to keep a record of the transaction, Evans took from Beck a bill
of sale of the stock.  This amendment was objected to; the
court sustained the objection and refused to allow the amend-
ment, and thereupon directed a verdict finding the property
subject.  Evans filed his bill of exceptions, claiming that the
court erred in refusing to allow the amendment and in direct-
ing a verdict against the claimant.  It was claimed by counsel
for the defendants in error that the judgment disallowing the

amendment was right for two reasons: (1) that the facts alleged in the amendment showed a conditional sale by Evans to Beck, and that the contract of sale had never been reduced to writing and recorded as required by the Civil Code, § 2776; and (2) that Evans was estopped to set up this defense, because he had received the bill of sale from Beck and thereby admitted that the title to the property was in Beck at the time the bill of sale was executed.

1. The facts alleged in the amendment offered did not show that there was a sale of any kind by Evans to Beck. The former furnished the money to the latter as his agent, and allowed Beck the use of the property purchased. Evans further agreed to sell to Beck the stock, if, within any reasonable time, he desired to make the purchase, Beck in the meantime paying a reasonable rental. Thus there was no sale to Beck, but only an option on Beck's part with no binding contract. Under this agreement, Evans or Beck could either, at any time, have brought their relations to an end. The transaction was a mere bailment. In the case of *Wiggins* v. *Tumlin*, 96 *Ga.* 753, Copeland delivered to Shannon a wagon and two mules, with the understanding that if the wagon and mules suited Shannon, they would make a sale of them at an agreed price and would then execute papers reserving title in Copeland until payment; and this court held that this constituted a mere bailment and that it did not become a sale until Shannon desired to purchase the property and executed a note, secured by mortgage, in payment, and that the title did not pass to Shannon until the contract of sale had been thus made and completed. This ruling was approved in *Harp* v. *Guano Co.*, 99 *Ga.* 752. In the present case, we think there was no sale at all, under the allegations of the offered amendment. There was, therefore, no sale with reservation of title, and the agreement was not such as is required by the Civil Code, § 2776, to be recorded.

2. The acceptance by Evans of the bill of sale from Beck does not estop him to set up the true relation between him and Beck and the circumstances surrounding the transaction. It will be remembered that this litigation is not between Evans and Beck, but between Evans and parties who had obtained judgment against Beck long prior to the execution of this bill

of sale. The plaintiffs in fi. fa. were not parties to the bill of sale, and did not in any way act upon the fact that Beck executed the bill of sale and that Evans accepted it. They were not in any manner hurt by the conveyance or led by it to do anything to their disadvantage. It is said by Herman, in his work on Estoppel, vol. 1, § 7, par. 5: "Nobody ought to be estopped from averring the truth or asserting a just demand, unless by his acts, or words, or neglect, his now averring the truth or asserting the demand would work some wrong to some other person who has been induced to do something or to abstain from doing something by reason of what he has said or done, or omitted to say or do." We think that there was no estoppel arising from the facts alleged in the amendment offered by the claimant, and that the latter had the right to show the circumstances under which the bill of sale was executed. He could show that, although he accepted this conveyance from Beck, the latter had really no title to convey. Of course his acceptance could be treated by the plaintiffs in fi. fa. as an admission that the title had theretofore been in Beck. It would then be for the jury to say what such an admission was worth under the circumstances and facts proved, and to find as to the true relation of the parties and the bona fides of the transaction. We think that the facts alleged made a question for the jury and not for the judge, and did not in any way estop the claimant to set up the truth of the transaction. This court, in discussing almost this identical question, in the case of *Sims* v. *Dorsey*, 61 *Ga.* 488, said: "In the trial of a claim case, the property in question being a crop of corn, cotton, etc., produced on the claimant's land by the labor of the defendant in fi. fa., the claimant is not estopped to set up that the defendant in fi. fa. was not his tenant, but cultivated the land as a mere cropper, though he took from him, whilst the crop was growing, a landlord's lien thereon for provisions and supplies, and, after the crop matured, sued out a distress warrant against him for rent, and caused said warrant to be levied upon the crop. These acts, though of great force as evidence on the question of title to the crop, did not prejudice the plaintiff in fi. fa. so as to work an estoppel in his favor, it not appearing that they induced him to extend the credit by which the defendant became his

debtor, or in any way lessened his security or affected his interest. See [*Davis* v. *Collier*] 13 *Ga.* 486. The claimant had a right to explain and account for them, and thus harmonize them with his final position, that the title to the crop was in himself and so remained." See also *Drake* v. *Bush*, 57 *Ga.* 180.

3. For the reasons given, we think that the court erred in refusing to allow the amendment offered by the claimant.

*Judgment reversed. All concurring, except Fish, J., absent.*