FIRST NATIONAL BANK OF HARVEY, a Corporation, Respondent, v. WOODWORTH ELEVATOR COMPANY, a Corporation, Appellant.

(206 N. W. 795.)

**Trover and conversion — evidence held to support findings on questions of identification, value of, and demand for grain.**

1. For reasons stated in the opinion, it is held that the evidence supports the findings of the trial court on the questions of identification, the value of, and the demand for, the wheat alleged to have been converted by the defendant.

**Trover and conversion — where owner of thresher's claim secured by lien, assigns claim and lien after demand and refusal, assignee may sue for conversion without new demand.**

2. Where the owner of a threshing claim, secured by a valid thresher's lien, makes a demand upon a person to whom the grain covered by the lien has been delivered, and the demand is refused, and thereafter assigns the claim and the lien, the assignee may elect to proceed against the person to whom the grain was delivered in conversion, and no new demand need be made by the assignee. A refusal to deliver the grain, in such circumstances, to any person who has the right to demand it, is evidence of conversion and may be proved by one who subsequently becomes an assignee of all the rights and interests of the owner of the claim secured by the lien.

**Trover and conversion — judgment based on market value on date of demand held proper.**

3. Where a cause of action in conversion is tried on the theory that the measure of damages is the market price at the time of demand, and there is no suggestion made in the trial court that the proper measure of damages, under the pleadings, is the highest market price intervening the conversion and the verdict, a judgment based upon the market value on the date of the demand will not be disturbed on appeal.

Opinion filed November 13, 1925.   Rehearing denied December 21, 1925.

Trover and Conversion, 38 Cyc. p. 2038 n. 6; p. 2084 n. 19; p. 2087 n. 26; p. 2088 n. 32; p. 2094 n. 61.

Appeal from the District Court of Wells County, *Berry,* J.

Note.—(3) Value of property at time of conversion as basis of damages in trover, see 26 R. C. L. 1149.

Affirmed.

*Libby & Harris,* for appellant.

*Aloys Wartner,* for respondent.

JOHNSON, J. This is an action to recover the value of a quantity of grain, alleged to have been converted by the defendant, on which plaintiff's assignor had a thresher's lien. The case was tried to the court without a jury.

During the season of 1920 one Rawle farmed some land in Wells county on which he raised about 1600 bushels of wheat and 800 bushels of oats. The land belonged to men named Anderson and Blauer. Rawle farmed no other land. In the fall of that year one Fisher threshed the grain for Rawle for the agreed compensation of $32 per hour; Fisher under his contract became entitled to $1,096, on which account he was paid $432; he filed a thresher's lien, in due time, for the balance—$664. The lien has never been satisfied, or the lien claim paid.

The Fisher account, together with the lien, were assigned and reassigned until both became the property of the plaintiff. The first assignment was to Hanson and Bolenbaugh on February 21, 1922; next, on August 17, 1922, back to Fisher; and by Fisher to the plaintiff on August 21, 1922. All assignments were filed in the office of the Register of Deeds.

The validity of the lien is not in dispute. Nor is there any room for argument as to the ownership of the lien. The questions most seriously urged, relate to the identification of the grain, and the sufficiency of the demand to support an action in conversion. Specifically, the defendant contends that the evidence does not warrant a finding that the grain threshed by Fisher was delivered to the elevator, and that a legal or sufficient demand was made.

The testimony of Fisher and of the agent of the defendant shows that $291\frac{1}{2}$ bushels of wheat were delivered at the defendant's elevator; that this grain was raised by Rawles. It appears that Fisher threshed all of Rawle's crop, and that Rawle farmed no other land than that which was described in the lien. The court found that $291\frac{1}{2}$ bushels were delievered to the defendant, and that the value thereof was $1.80 per bushel on October 27, 1920, when plaintiff claims the demand was.

made. We are satisfied that the evidence amply supports the findings on these points.

Was there a sufficient demand? This is the only serious question in the case. The testimony on this point is meager. Fisher says that he went to the office of the defendant on October 27, 1920, and talked with the agent Erickson with reference to his claim. Q. "At that time what did you say to Mr. Erickson about your threshing bill?" A: "I told him I had a lien against it and I wanted my money." Q. "Did you ask him to deliver the wheat to you for your thresh bill?" To this last question defendant objected on the ground that it called for a "legal conclusion," which, manifestly, was not correct, but the court sustained the objection. Witness was then asked: "Did he give you any money?" A: "No." Q: "Did he ever deliver any of the grain to you?" A: "No." The witness then says he saw Erickson twice about this matter and that at no time did the defendant deliver any grain or pay any money on account of the claim or lien. On cross-examination he says he wanted to know from Ericksoon when his lien "was to be paid." Erickson, the agent, then gave Fisher some legal advice, as follows: "There is a mortgage before you. Pat Rawle worked for you and you got your money from Pat, or should have got it." He further says that he talked "several times" to the agent about "getting the money;" but wholly without success. Q: "You did not ask him for any grain then?" A: "I did not, any more than that I asked him when I could get the money." Again: "He (Erickson) insinuated that I had been paid for my threshing bill."

Later, on or about February 24, 1922, a demand, by letter, was made on the defendant. This was entirely ignored, though clearly sufficient. The claim of defendant that this demand was unauthorized is not sustained by the record. Hanson and Bolenbaugh, while, perhaps, disclaiming a desire to become involved in litigation for the enforcement of the lien, distinctly did not waive their right to the proceeds of the grain. The defendant, with full knowledge of the claim of the lienee and his assigns, paid the value of the grain to other parties.

Upon the whole record we are satisfied that the attitude of the defendant was such that a specific demand for the wheat, on October 27, 1920, would have been wholly unavailing. The agent seems to have been of the opinion that the thresher's lien was inferior to that of the

53 N. Dak.—29.

mortgage and that, in any event, Fisher had been paid; therefore, he in effect, said to Fisher. "You have no interest in this grain under your lien on which you will realize anything from us." A little over one year later; when an unequivocal demand was made, this attitude seems to have been precisely the same. It is clear that demand would have been ineffectual. Defendant claimed Fisher had been paid for the threshing and that the lien was inferior to that of a mortgage of a prior date. Such being its position, it is idle to suppose that had a specific demand for the grain been made, on October 27, 1920, the defendant would have complied. Our decision in Farmers State Bank v. Jeske, 50 N. D. 813, 197 N. W. 858, is in point and, we think, controlling against the defendant's contention on the question of the sufficiency of the demand. We are satisfied in view of the attitude of the defendant, that a sufficient demand was made by Fisher. See Kirkland v. Wallace, 29 Ga. App. 238, 114 S. E. 649, where it was held that a demand for the proceeds of a quantity of cotton said to have been converted, "was tantamount to a demand for the property itself."

Defendant contends that the demand made by Fisher does not inure to the benefit of the plaintiff as assignee; that the assignment was merely of the cause of action on a contract and did not carry with it the right to sue in conversion without a demand first made by the assignee. It is conceded that no demand was made by the plaintiff.

The assignment from Fisher to Hanson and Bolenbaugh, from the latter back too Fisher, and from Fisher to the plaintiff, so far as material, reads as follows: "For value received, I hereby assign . . . that certain thresher's lien . . . together with all the *debt and claim secured thereby* . . . and authorize and empower (assignee) to collect the same at its own cost . . . the *same as I could have done.*"

It will be observed that the assignment purports to transfer to the plaintiff all the claim of the assignor against Rawle; it gives the assignee, upon its face, the same rights with respect to the enforcement of the claim and of the lien as had the assignor. By this assignment, Fisher parted with all, right, interest or equity he had, by virtue of the labor performed and his lien upon the grain. All his rights arising out of the transaction between himself and Rawle, were transferred to the plaintiff. When the assignment was made, Fisher was the owner of a complete cause of action against the defendant arising out of its re-

fusal to deliver or in any manner account for a quantity of grain on which Fisher had a first lien. He had a right to elect whether to sue for the recovery of the grain in replevin, or to treat the grain as converted by the defendant and sue in conversion. He had made a demand which was refused. We think, upon principle and authority, that no new demand was necessary in order to entitle the plaintiff to maintain an action in conversion against the defendant. "A refusal to deliver (property) to any person who had a right to demand it, was evidence tending to prove such conversion, and therefore the plaintiff was rightly allowed to prove the facts which had actually at any time occurred." Delano v. Curtis, 7 Allen, 470–475. "Where a cause of action for conversion has become complete by demand, and refusal to deliver, it may be assigned, and no new demand by the assignee is requisite." Robinson v. Kaplan, 21 Misc. 686, 47 N. Y. Supp. 1083. See also Baumann v. Jefferson, 4 Misc. 147, 23 N. Y. Supp. 685. In 38 Cyc. 2036, and note 90, it is said that "Trover may be maintained without a previous demand where there has been refusal to give up the chattel. . . . This is true even though the action therefor be brought by a subsequent owner of the property."

When the defendant refused to recognize the rights of Fisher, under his lien, it became, on the election of Fisher or of any person rightfully claiming under him, guilty of exercising dominion over the property inconsistent with the rights of the lienee and of any subsequent assignee of the claim and the lien. It took a position, with reference to the wheat covered by the lien, utterly inconsistent with the rights of the lienee or of any persons claiming by valid assignment. Of this it had notice and no new demand by a subsequent assignee, in the circumstances, was necessary to fix its status as a converter of the grain.

The plaintiff alleges that "it will make demand and ask for damages for the highest market price—from the time of the conversion to this date." In the prayer judgment is asked with "interest from October 15, 1920 at the rate of 6 per cent." Interest was allowed by the court from October 27, 1920, the date of the conversion. The defendant contends that plaintiff clearly elected to demand the highest market price, never indicated a change of attitude in this respect, and is not entitled to interest, in view of subdivision 2 of § 7168, Comp. Laws 1913. No effort was made to prove the highest market value, within

the rule of the statute. The defendant made no objection to the proof of value, as of the date of the alleged conversion, on the ground that the plaintiff had elected to claim the highest market price. Nothing occurred during the trial to suggest to the court that the defendant disputed the right of the plaintiff to recover the market value of the grain when converted, should it be entitled to recover anything. We think the court was justified in assuming that both parties were trying the case on the theory as to damages on which the judgment was entered. Rosum v. Hodges, 1 S. D. 308, 9 L.R.A. 817, 47 N. W. 140.

Other errors are assigned. We have considered them all, but find them so lacking in merit that we do not deem it necessary to notice them further.

The judgment is affirmed.

CHRISTIANSON, Ch. J., and BURKE, BIRDZELL, and NUESSLE, JJ., concur.