NAGLE ENGINE & BOILER WORKS *v.* M. MITSHKUN CO.

1. APPEAL AND ERROR—QUESTION MAY NOT BE RAISED FOR FIRST TIME IN APPELLATE COURT.

   That the contract sued on was lacking in mutuality may not be raised for the first time in the Supreme Court for the purpose of defeating the judgment.[1]

2. BAILMENT—SALES—BAILMENT MAY BE CHANGED TO ABSOLUTE SALE BY EXERCISING OPTION IN CONTRACT PROVIDING THEREFOR.

   In an action on a contract providing that boilers consigned to defendant by plaintiff might, at the latter's option, after the expiration of six months, be considered sold and charged to defendant the same as though actually sold, a verdict was properly directed in favor of plaintiff, on proof that it had exercised said option, over defendant's objection that the contract was one of bailment merely.[2]

Error to Wayne; Murphy (Alfred J.), J. Submitted January 22, 1926. (Docket No. 89.) Decided March 20, 1926.

Assumpsit by the Nagle Engine & Boiler Works against the M. Mitshkun Company for goods sold and delivered. Judgment for plaintiff on a directed verdict. Defendant brings error. Affirmed.

*E. R. Milburn* and *Prewitt Semmes,* for appellant.

*Clark, Emmons, Bryant & Klein,* for appellee.

CLARK, J. Defendant bought goods of plaintiff which were charged to it in a ledger account, so-called. It also received goods, five boilers, on consignment, which were charged in another account, called consignment account, and which were covered by a written

---

[1]Appeal and Error, 3 C. J. § 596; [2]Bailments, 6 C. J. § 7.

contract, containing usual provisions relative to risk of damage by fire or other cause, report of sales, settlement, etc.    The part of the contract here important may be said to be:

"It is further understood and made a part of this agreement that any engines and boilers or other goods shipped to you on consignment and not sold (or reported sold) at the expiration of   *   *   *   (six) months from date of shipment may, at that time or thereafter at our option, be charged to your ledger account and goods thus charged are to be settled for the same as though actually sold."

After the expiration of the period of six months from the date of shipment defendant had on hand two of the boilers.    Plaintiff, exercising its option, charged defendant for them in the ledger account, and sent invoice, statements, and requests for payment. This action was brought to recover the amount so charged.    Both sides requested a directed verdict. There was direction for plaintiff and judgment was entered thereon.    Defendant, assigning error, presents two questions.

1. That the contract lacks mutuality.    This question was not raised in the trial court, not called to the attention of the trial judge, and, therefore, to defeat the judgment, cannot be raised here for the first time.

2. That the contract is one of bailment, not of sale.    Appellant cites many authorities to support its contention that the contract is one of bailment.    It is.    But we may not overlook the further provision, quoted above, giving the plaintiff the option to declare the transaction a sale in the contingency that goods remained in defendant's hands after the expiration of the period of six months.    The plaintiff exercised the option, did just what the contract said it might do.

It is said in 6 C. J. pp. 1094, 1095:

"It is possible, however, to create by one contract a relation of agency which is to be changed by the fulfillment of given conditions or by the exercise of an option by one of the parties into a conditional or absolute sale. In such cases on the fulfillment of the condition or the exercise of the option title at once passes to the agent; and this is so even though he may not have paid for the goods as the contract provides, where payment of the price is not made a condition precedent to the passing of title."

And in 1 Mechem on Sales, § 45:

"It is, moreover, entirely possible that the relations of the parties may change, or be susceptible of change, during the progress of the transaction. Thus there may be the creation of a genuine agency to sell, but, coupled with it, the right of the agent to himself become the purchaser if he so desires, or a stipulation that in a certain contingency—as if he sells at a different time or price than that fixed—he shall or may be treated as a purchaser. In such a case, if the contingency contemplated occurs, the transaction will cease to be an agency to sell and will become a sale."

In *Re Thomas,* 231 Fed. 513, a piano company, the bailor, had consigned pianos to a bailee, who became bankrupt. The bailor filed petition with the referee demanding possession of the pianos. The petition was dismissed. The contract of bailment contained the following:

"If any piano is unsold six months from date of shipment, I (that is, A. A. Thomas, the bankrupt) agree to pay for same at your option."

On review it was held:

"It is conceded that more than six months had elapsed before the adjudication was had. Counsel for the trustee contend that under this clause in the contract the piano company had the right at its option to compel the bankrupt to take and pay for the pianos at the expiration of six months from date of shipment, and that this provision made the contract one of sale

instead of consignment. They also contend that such clause is a fraud on the creditors, giving the piano company a secret power to call the contract one of sale or one of consignment to meet the exigencies of the situation. The highest courts of this State have never decided this exact point. They have, however, recognized and enforced the distinction between consignment contracts and contracts of conditional sale, and have held that it is not necessary under the laws of Georgia for a consignment contract to be recorded. *Furst* v. *Commercial Bank,* 117 Ga. 474 (43 S. E. 728) ; *Powell* v. *Brunner,* 86 Ga. 532 (12 S. E. 744) ; *Federal Rubber Co.* v. *King,* 12 Ga. App. 261 (76 S. E. 1083) ; *National Bank* v. *Goodyear,* 90 Ga. 711 (16 S. E. 962).

"The supreme court of Georgia has held, also that the converse of the proposition contained in the clause now under consideration, so as to give the consignee an option of purchase, is not inconsistent with a bailment or consignment until such option is actually exercised. *Evans* v. *Napier,* 111 Ga. 102 (36 S. E. 426) ; *Wiggins* v. *Tumlin,* 96 Ga. 753 (23 S. E. 75) ; *Furst* v. *Commercial Bank, supra.* Other courts elsewhere have also construed consignment contracts which contain a clause giving the consignee an option to buy the consigned goods, and have likewise held that this clause, before the option is exercised, does not divest the contract of its nature as a bailment or consignment, or convert it into a contract of sale. 35 Cyc. p. 655, and cases cited in note 60; *In re Pierce,* 85 C. C. A. 14, 157 Fed. 757.

"We see no reason in law or equity why the rule should not work both ways. The question depends upon what the parties bind themselves to under the terms of the contract in accordance with its original terms, and where one of the parties has to take some affirmative action, so as to change the effect and operation of the contract as it originally stood, we do not see how in the absence of such affirmative action the nature of the contract is changed."

And see *Moline Plow Co.* v. *Rodgers,* 53 Kan. 743 (37 Pac. 111, 42 Am. St. Rep. 317) ; 1 Williston on Sales (2d Ed.), p. 788.

On this record it is held that upon plaintiff's so exercising its option title passed to defendant and it became indebted to plaintiff for the amount claimed.

Judgment affirmed.

BIRD, C. J., and SHARPE, SNOW, STEERE, FELLOWS, WIEST, and McDONALD, JJ., concurred.